UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| USGEN NEW ENGLAND, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL O. LEAVITT, )<br>in his capacity as Administrator )<br>of the U.S. Environmental Protection )<br>Agency, et al. )<br>)<br>Defendants. )<br>) | | No. 04-12225 (RCL) |

**BRAYTON POINT STATION'S MEMORANDUM IN OPPOSITION
TO THE DEFENDANTS' MOTION TO DISMISS**

This case presents the issue whether an administrative agency may avoid carrying out a nondiscretionary statutory duty, ignoring a decision of the United States Court of Appeals for the First Circuit that confirms the statutory right of an applicant for a National Pollutant Discharge Elimination System ("NPDES") permit under the Clean Water Act to an evidentiary hearing. In denying the Plaintiff's ("Brayton Point Station")[1] request for an evidentiary hearing in the instant case, EPA failed to perform its non-discretionary statutory duty owed to Brayton Point Station. Rather than address whether they are bound by law to perform this duty, the Defendants argue instead that the Court lacks subject matter jurisdiction and the complaint fails to state a claim on which relief can be granted.

---

[1] Effective January 1, 2005, USGen New England, Inc. ("USGenNE"), sold Brayton Point Station, the entity whose NPDES permit is here at issue, to Dominion Energy Brayton Point, LLC ("Dominion Brayton"). USGenNE has filed an unopposed motion requesting that Dominion Brayton be substituted as the Plaintiff. Because that motion has not been acted upon, the Plaintiff is referred to herein as Brayton Point Station.

In *Seacoast Anti-Pollution League v. Costle*, the United States Court of Appeals for the First Circuit held, as a matter of statutory construction, that the Clean Water Act requires EPA to provide applicants the opportunity for an evidentiary hearing prior to issuance of NPDES permits. *See Seacoast,* 572 F.2d 872 (1st Cir. 1978). Notwithstanding this governing decision, EPA refused Brayton Point Station's requests for an evidentiary hearing to address significant disputes concerning Brayton Point Station's NPDES permit. Brayton Point Station thereupon brought this action to compel EPA to afford it the hearing mandated by the Clean Water Act as confirmed in *Seacoast*.

As explained below, Defendants' contention that the Court lacks subject matter jurisdiction fundamentally mischaracterizes Brayton Point Station's claim and demonstrates a misunderstanding of the jurisdictional system established by Congress. Of no greater merit is Defendants' contention that Brayton Point Station's Complaint fails to state a claim upon which relief may be granted. District courts have full authority under Section 505 to require that a duty be performed as required by law, not merely that a duty be performed in any manner the agency may choose.

The relief requested by Brayton Point Station is within this Court's power to grant, and accordingly the Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss.

**FACTUAL BACKGROUND**

Plaintiff is the owner of Brayton Point Station, an electrical generating facility located on the shores of Mount Hope Bay in Somerset, Massachusetts. (Complaint, ¶ 10.) Brayton Point Station was constructed in the 1960s and, like virtually all plants of its vintage, withdraws and

discharges cooling water to remove excess heat from the generating equipment, a process known as "once-through" or "open-cycle" cooling.

As required under the Clean Water Act (the "Act"), 33 U.S.C. § 1251, *et seq.* (2004), Brayton Point Station's withdrawals and discharges of cooling water have been authorized since the 1970s by a series of NPDES permits issued by EPA pursuant to § 402(a) of the Act, 33 U.S.C. § 1312(a). (Complaint, ¶ 11.) Cooling water discharges are governed by the "thermal variance" procedures set forth in Section 316(a) of the Act, 33 U.S.C. § 1326(a). (Complaint, ¶ 11.) Brayton Point Station most recently applied for renewal of its NPDES permit and Section 316(a) thermal variance in 1998. (Complaint, ¶12.)

EPA Region I issued its final NPDES permit for Brayton Point Station on October 6, 2003. On November 4, 2003, Brayton Point Station submitted a petition to the Environmental Appeals Board requesting review of the final permit. Separately, Brayton Point Station requested by Motion that it be afforded an evidentiary hearing prior to final agency action on the permit. (Complaint, ¶17.) The EAB took jurisdiction over Brayton Point Station's Motion and, at the request of the EAB, Brayton Point Station subsequently submitted extensive briefing on the issue of EPA's duty to grant an evidentiary hearing.

On July 23, 2004, the EAB issued an order denying Brayton Point Station's request. *See In re USGen New England, Inc.*, NPDES Appeal No. 03-12 (July 23, 2004), 11 E.A.D. __. After the EAB issued its order, Brayton Point Station did two things. First, to guard against any EPA contention that immediate review could be had only in the court of appeals, Brayton Point Station filed a petition for review in the First Circuit. When EPA argued there that review was not available in that Court, Brayton Point Station accepted a voluntary dismissal of the appeal. Second, Brayton Point Station reiterated its request in an August 11, 2004 letter to the EPA

Administrator, serving notice pursuant to Section 505(b)(2), 33 U.S.C. § 1365(b)(2), of Brayton Point Station's intent to commence this action.[2] (Complaint, ¶20.) The 60-day time limit passed with no further response from EPA. *Id.* On October 22, 2004, Brayton Point Station filed its Complaint.

## LEGAL FRAMEWORK

The central legal issue in this case is the type of hearing EPA is required to provide prior to final issuance of permits under Sections 402(a) and 316(a) of the Clean Water Act. By their express terms, these provisions state that permit limits may be imposed only "after opportunity for public hearing." Since the Clean Water Act was enacted, three courts of appeal -- including the First Circuit – have construed this "public hearing" requirement to incorporate the formal evidentiary hearing procedures of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* (2004). *See United States Steel Corp. v. Train*, 556 F.2d 822, 833-34 (7th Cir. 1977);[3] *Marathon Oil Co. v. EPA*, 564 F.2d 1253, 1264 (9th Cir. 1977); *Seacoast Anti-Pollution League v. Costle*, 572 F.2d 872, 878 (1st Cir. 1978).

The First Circuit, in *Seacoast*, found that the opportunity for evidentiary hearings was mandated by the nature of the NPDES permitting process. The Court concluded that NPDES decisions often present "sharply disputed" issues of fact that would benefit from an adversarial process and that formal procedures were needed to allow appropriate judicial review of decisions

---

[2] *See* Letter from W. Jacobs to M. Leavitt of Aug. 11, 2004. A copy of the Notice letter is attached hereto as Exhibit A.

[3] A secondary basis relied upon by the Seventh Circuit for its decision in *United States Steel* was abandoned by that Court in *City of West Chicago v. United States Nuclear Regulatory Comm'n*, a case construing the nature of hearings required under the Atomic Energy Act. *See* 701 F.2d 632, 644 (7th Cir. 1983). The abandoned ground formed no part of the First Circuit's *Seacoast* decision -- indeed, the Seventh Circuit's decision in *City of West Chicago* followed *Seacoast* in rejecting this ground. *City of West Chicago*, 701 F.2d at 644. *City of West Chicago* acknowledged that the Court had no reason to revisit the primary basis of *United States Steel*, which construed the judicial review language of the Clean Water Act, because of textual differences between that statute and the Atomic Energy Act. *City of West Chicago*, 701 F.2d at 644..

that could have a "serious impact on private rights." *Seacoast*, 572 F.2d at 876-77. The First Circuit's recent decision in *Citizens Awareness Network* makes clear that *Seacoast* remains the law in the First Circuit. *See Citizens Awareness Network, Inc. v. United States*, 391 F.3d 338, 348, n.4 (1st Cir. 2004).[4]

The circumstances presented by the case at hand mirror precisely those considered by the First Circuit in *Seacoast*. As in *Seacoast*, the key NPDES terms at issue for the Brayton Point Station permit relate to the use of cooling water, an issue raising the prospect of major capital costs. Indeed, *any* significant alteration to the Station's current cooling system would impose costs in the tens of millions of dollars. And, the terms imposed by EPA in the subject permit would require construction of an entirely new recirculating cooling system at an estimated cost of $250 million. Thus, the final determination of the permit's terms will have, by any reasonable measure, a "serious impact on private rights." *Seacoast*, 572 F.2d at 876.

Furthermore, the process through which the Brayton Point Station permit was developed has been marked by sharp disputes regarding factual matters critical to the permit terms, including the biological condition of Mount Hope Bay and the types of cooling technologies that reasonably could be used at the facility. In several instances, changes in position by agency scientists have indicated the need for an adversarial process to determine the actual basis for EPA's permit terms. *See id.* at 876-77 (explaining the need for an adversarial process and on-the-record hearing to ensure both "reasoned decision-making and meaningful judicial review" and noting that, without this safeguard, important determinations could be made "on the basis of evidence that a court would never see or, what is worse, that a court could not be sure existed").

---

[4] The central holdings of *Marathon Oil* and *United States Steel* also have never been overturned in the jurisdictions in which they were decided.

For these reasons, this action was brought to require EPA to perform its non-discretionary duty under Sections 402(a) and 316(a) of the Act to provide Brayton Point Station an evidentiary hearing before issuing its final permit decision.

# ARGUMENT[5]

Defendants' Memorandum in Support of the Motion to Dismiss ("Motion to Dismiss") is an exercise in misdirection.  Unable to dispute that *Seacoast* affords a non-discretionary right to an evidentiary hearing, the Defendants instead present a varied list of suggestions for how Plaintiff should have raised or might raise their concerns in a petition to the First Circuit.  Whether correct or not, Defendants' arguments do nothing to cast doubt on this Court's jurisdiction to hear Brayton Point Station's Complaint.  As explained below, Defendants' have a non-discretionary duty to hold an evidentiary hearing. As also set forth below -- and not disputed by Defendants -- Brayton Point Station has met the jurisdictional prerequisites for an action under Section 505(a)(2).  Having done so, therefore, Defendants' contentions are irrelevant.  Defendants' perfunctory contention that Brayton Point Station has failed to state a claim is equally incorrect and cannot save their Motion to Dismiss.

## I. The District Court Has Jurisdiction To Hear Brayton Point Station's Claim that EPA Failed To Perform a Non-discretionary Duty.

By its express terms, Section 505(a)(2) of the Act vests in the district courts jurisdiction over all civil actions "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under [the Clean Water Act] which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2).  In applying Section 505, courts recognize only

---

[5] The Plaintiff assumes the district court is familiar with the applicable standards of review and therefore does not reiterate them here.  However, Brayton Point Station must object to EPA's mischaracterization of First Circuit precedent in its "Standard of Review" section.  EPA purports to quote *Murphy v. United States*, 45 F.3d 520 (1st Cir. 1995) for the proposition that subject matter jurisdiction may not be based "merely on . . . interpretations of law."

two prerequisites to district court jurisdiction. First, a plaintiff must comply with the statutory requirement that the Administrator be given 60 days notice prior to filing a complaint. *See, e.g., Garcia v. CECOS Int'l, Inc.*, 761 F.2d 76, 80 (1st Cir 1985) (discussing issue in the context of analogous 60-day notice provision under RCRA). Second, the plaintiff must identify "a clearly mandated nondiscretionary duty imposed on the Administrator." *Miccosukee Tribe of Indians of Florida v. EPA*, 105 F.3d 599, 602 (11th Cir. 1997).

Both jurisdictional prerequisites are met here. It is undisputed that Brayton Point Station satisfied the notice requirement. (See Complaint, ¶ 20.) The Complaint also identifies the non-discretionary statutory duty, confirmed by *Seacoast*, to provide an evidentiary hearing. (Complaint, ¶ 21.) This matter therefore falls within the jurisdictional scope of Section 505. *Estate of Soler v. Rodriguez*, 63 F.3d 45, 47 n.1 (1st Cir. 1995) (citing *Bell v. Hood*, 327 U.S. 678, 682-82 (1946), for the proposition that a complaint stating a federal question will be dismissed for lack of jurisdiction "only if the claim is immaterial and made solely for the purpose of obtaining jurisdiction or if the claim is clearly frivolous or wholly insubstantial"); *Cronin v. Browner*, 898 F. Supp. 1052, 1057-59 (S.D.N.Y. 1995) (applying this standard to uphold jurisdiction under Section 505).

That EPA's duty to provide an evidentiary hearing relies on the First Circuit's construction of Sections 402(a) and 316(a) in *Seacoast*, rather than on bare statutory language, does nothing to alter the district court's obligation to enforce that duty. To the contrary, many cases arising under Section 505 rely on judicial construction in determining the nature of a statutory duty or in assessing EPA's compliance with that duty. *See, e.g., William J. Scott v. City of Hammond*, 741 F.2d 992, 997-98 (7th Cir. 1984) (interpreting Section 303(b)(1) to contain a

---

Mot. to Dismiss at 6. A review of the case reveals that the actual quote is as follows: "A Plaintiff, however, may not rest merely on '*unsupported* conclusions or interpretations of law.'" *Murphy*, 45 F.3d at 522 (emphasis added).

"constructive submission" requirement under which "a refusal to act would amount to a determination that no [state regulation implementing the TMDL program] is necessary and none should be provided"); *Cronin*, 898 F. Supp. at 1059-60 (concluding, after statutory construction, that issuance of regulations under Section 316(b) of the Clean Water Act is subject to the statutory deadlines appearing in Section 301 of the Act); *Raymond Proffitt Found. v. EPA*, 930 F. Supp. 1088, 1099-1100 (E.D. Pa. 1996) (construing Section 303(b)(1) and holding that EPA's inaction for 588 days in issuing a regulation violated its non-discretionary duty to "promptly" issue a federal standard when a state failed to act).

Thus there is no dispute that, on its face, the Complaint is within the jurisdictional scope of Section 505. In order to construct an argument that the Complaint nonetheless should be dismissed for lack of jurisdiction, Defendants contend that the relief Brayton Point Station requests would require this Court to tread on the exclusive jurisdiction of the Courts of Appeals to review the substance of EPA regulations and to entertain challenges to NPDES permits at the conclusion of all agency action. Neither of these contentions ousts this Court of its jurisdiction under Section 505.

## II.   Brayton Point Station Does Not Seek Review of EPA's NPDES Regulations.

Defendants argue that this Court should decline jurisdiction because the relief Brayton Point Station seeks would require the Court to "review" EPA's current NPDES regulations. Motion to Dismiss, p. 8. Their argument fails on two grounds. First, contrary to EPA's assertion, enforcing *Seacoast* presents no necessary conflict with EPA's current regulations, since the regulations do not prohibit evidentiary hearings. Thus, the issue of judicial review does not arise. Second, even assuming a conflict exists, an order of this Court to compel compliance with *Seacoast* would not constitute "review" of the rule. District courts have a recognized

authority to require compliance with binding precedent *in a specific case*, notwithstanding a contrary regulation. Doing so does not implicate the power to invalidate the rule itself.

### A.    Brayton Point Station's Request Does Not Conflict with the Regulations.

Brayton Point Station does not ask this Court to review EPA's procedural regulations. No necessary conflict exists between the regulation and Brayton Point Station's request. Although the revised regulations no longer provide expressly for evidentiary hearings, they also do not preclude them.

The sole regulatory provision addressing the issue is found in 40 C.F.R. § 124.21. This provision states only that EPA has "eliminated the previous *requirement* for NPDES permits to undergo an evidentiary hearing." *See* 40 C.F.R. § 124.21(b) (2004) (emphasis added). This is not a statement that evidentiary hearings are prohibited. That the regulations no longer provide explicitly for evidentiary hearings on NPDES permits does not alter the authority of EPA to hold them when appropriate or necessary. In fact, the ability of EPA to hold special hearings is well established and the Administrative Procedure Act is available for doing so. *See, e.g., Tennessee Valley Auth. v. Whitman*, 336 F.3d 1236, 1245 (11th Cir. 2003) (discussing special proceeding held by EPA's EAB to adjudicate a unique Clean Air Act compliance order).

Defendants point to an observation in the preamble of the revised rule that they suggest confirms EPA's intent to prohibit evidentiary hearings. Motion to Dismiss, p. 10 n.6. It is unnecessary, however, to draw that inference, especially in light of the fact such an interpretation would be prohibited by established rules of construction. As the First Circuit has stated, while an agency has "considerable latitude" to interpret its own regulations, that latitude "does not extend to an interpretation that contravenes the statute that the regulation is supposed to implement." *Massachusetts v. Sec'y of Health & Human Servs.*, 816 F.2d 796, 804 (1st Cir. 1987), *rev'd in*

*part on other grounds*, 487 U.S. 879 (1988). The interpretation Defendants advocate would create a conflict with the Clean Water Act and *Seacoast* that does not otherwise exist and therefore should be avoided.

Because the relief requested by Brayton Point Station presents no necessary conflict with EPA's rules, the cases cited by Defendants are irrelevant. In both *Trustees for Alaska v. EPA*, 749 F.2d 549 (9th Cir. 1984), and *Oljato Chapter of the Navajo Tribe v. Train*, 515 F.2d 654 (D.C. Cir. 1975), the plaintiffs expressly sought to overturn or revise the rule in question, which Brayton Point Station manifestly has not done. *Trustees*, 749 F.2d at 559 ("The Miners contend that the current regulation . . . is invalid."); *Oljato*, 515 F.2d at 657 (noting that plaintiff's action asked EPA to "revis[e] EPA's [previously issued] standard of performance . . . ."). Similarly, the decision in *Natural Resources Defense Council v. Zeller*, 688 F.2d 706 (11th Cir. 1982), relies on the court's conclusion that the plaintiff's challenge would require "invalidating" an EPA regulation. *Id.* at 711. Here the court can enforce Brayton Point's right to an evidentiary hearing as confirmed in *Seacoast* without invalidating any EPA regulation.[6]

### B.     The Rule Does Not Affect This Court's Jurisdiction to Enforce *Seacoast*

Even if the Court concluded that EPA's regulation conflicted with *Seacoast*, such a conflict would not affect the validity of Brayton Point Station's claim or this Court's jurisdiction. An agency regulation, even if properly issued, does not overrule pre-existing circuit precedent. Nor does it alter the district courts' duty or jurisdiction to apply the law of the circuit. Pursuant to these governing principles a district court must decide the issues before it in accordance with

---

[6] It is also important to note that in none of these cases was there a decision of the relevant circuit court on the issue in question. Thus, the district court in the cited cases would have been required to determine in the first instance whether statutory constructions adopted in the rule allegedly being challenged were consistent with statutory requirements. In this case, the relevant statutory requirements have already been construed by the First Circuit in binding precedent and the Court is being asked only to apply the law of the First Circuit. This Court therefore has no need to conduct a substantive review of the rule.

circuit law, even if it means failing to give effect to a conflicting rule. Such action by a district court does not alter the validity of the rule in any other case and therefore does not implicate the power of judicial review of regulations.

It is beyond dispute that a district court must apply the holdings of the circuit in cases that come before it. *See, e.g., Stewart v. Dutra Constr. Co. Inc.*, 230 F.3d 461, 467 (1st Cir. 2000) ("[T]he principle of *stare decisis* . . . renders the ruling of law in a case binding in future cases before the same court or other courts owing obedience to the decision.") (internal punctuation omitted). Indeed, a decision by a panel of the First Circuit, such as *Seacoast*, binds subsequent panels of the Circuit itself, absent an *en banc* decision to abandon that precedent or some other compelling circumstance. *See, e.g., United States v. Gonzalez-Arimont*, 268 F.3d 8, 13 (1st Cir. 2001) ("In a multi-panel circuit, uniformity of decision is achieved only by strict adherence to previous holdings, with the function of overturning precedent reserved for the court sitting *en banc*".).

These principles apply with equal force when an administrative agency issues regulations pursuant to a statute that a circuit court has previously construed. Whether acting by rule or otherwise, an agency "cannot compel a court to forego the principle of stare decisis and abandon a construction previously made." *Aguirre v. INS*, 79 F.3d 315, 317-18 (2d Cir. 1996); *Bankers Trust New York Corp. v. United States*, 225 F.3d 1368, 1376 (Fed. Cir. 2000) ("[The Court] may not give the IRS or any executive branch agency the power to overrule an established statutory construction of the court -- a power that, with regard to [the Circuit court's] prior precedents, even a later panel of this court lacks."). Furthermore, "federal agencies . . . are required to abide by the law of [the] Circuit in matters arising within the jurisdiction of [the] court, until and unless it is changed by [the] court or reversed by the Supreme Court of the United States." *Indus.*

*Turnaround Corp. v. NLRB*, 115 F.3d 248, 254 (4th Cir. 1997) (internal quotation marks omitted); *BPS Guard Servs. v. NLRB*, 942 F.2d 519, 524 (8th Cir. 1991) ("[T]he law of the circuit . . . is binding on all inferior courts and litigants . . . including administrative agencies dealing with matters pertaining to this circuit.").[7]

The foregoing does not preclude an agency from issuing a rule that conflicts with the precedent of one or more circuits. Under the principle of non-acquiescence, agencies have a recognized power to take positions contrary to judicial precedent in hopes of, for example, prompting a circuit split and ultimately obtaining a favorable decision from the Supreme Court. *See generally N.L.R.B. v Goodless Bros. Elec. Co.*, 285 F.3d 102, 107 n.4 (1st Cir. 2002). That is essentially what EPA did in issuing its revised procedural regulations. Expressly acknowledging *Seacoast* and other decisions holding that evidentiary hearings were required, EPA stated that later decisions by other courts, construing other statutory provisions, called those holdings into question. *See Amendments to Streamline the National Pollutant Discharge Elimination System Program Regulations,* 65 Fed. Reg. 30,886, 30,896 (May 15, 2000).[8] However, while issuance of this type of non-acquiescing regulation is not prohibited, it does nothing to change the law of the First Circuit, unless the Circuit, upon review, chooses to abandon its precedent. *See Aguirre*, 79 F.3d at 317-18; *Bankers Trust*, 225 F.3d at 1376.

---

[7] Some Courts of Appeals have taken a less strict view of *stare decisis* where the earlier precedent simply affirmed an agency construction but did not itself construe the statute. *See, e.g., Mesa Verde Constr. Co. v. Northern California Dist. Council of Laborers,* 861 F.2d 1124, 1136 (9th Cir. 1988) (specifically limiting its holding to the situation in which the original precedent "constituted deferential review of [agency] decisionmaking"). To date, the First Circuit has yet to provide an analysis of its position on this issue. *Cf. LaBonte v. Hunnewell*, 70 F.3d 1396, 1405 (1st Cir. 1995) (noting in dicta that an agency may "supplant prior judicial precedent" but not discussing the circumstances under which it may do so), *reversed and remanded*, 520 U.S. 751 (1997). Since *Seacoast* resulted not from "deferential review" but an outright reversal of agency action based on statutory construction, even the more lenient view would not change the result in this case.

[8] The principal decision relied on by EPA was a District of Columbia Circuit Court case under the Resource Conservation and Recovery Act ("RCRA") which took issue with some aspects of the legal analysis in *Seacoast*. *See Chemical Waste Mgmt., Inc. v. EPA*, 873 F.2d 1477, 1481 (D.C. Cir. 1989).

It is also important to note that, in this Circuit, subsequent precedent has not borne out EPA's wishful thinking. Last month, in a case involving hearings required to be conducted by the Nuclear Regulatory Commission under the APA, the Court of Appeals for the First Circuit declined to reconsider the continued validity of *Seacoast*. *Citizen's Awareness*, 391 F.3d at 348, n.4. It then proceeded to apply *Seacoast* in addressing whether the NRC's revised procedures conformed to the APA's evidentiary hearing requirements. *Id.* at 350-351; *see also Dantran, Inc. v. United States Dep't of Labor*, 246 F.3d 36, 46 (1st Cir. 2001) (following *Seacoast* on precisely the point challenged by EPA).

Because *Seacoast* remains good law, district courts in the First Circuit must continue to follow it. *See Dutra*, 230 F.3d at 467. Contrary to Defendants' suggestion, refusing to apply a conflicting rule in a specific case, in deference to circuit precedent, does not constitute "review" of a regulation -- indeed, it indicates nothing whatsoever about the validity of the rule. It merely acknowledges the district courts' obligation to give effect to the rights accorded by circuit precedent in a specific case under *stare decisis*. *See, e.g., Schisler v. Sullivan*, 1992 U.S. Dist. LEXIS 10989, *12 (W.D.N.Y. 1992) (acknowledging validity of agency rule governing weight to be given medical opinions but refusing to apply it in specific case because of conflict with judicially-created Treating Physician Rule of the Second Circuit); *Aldrich v. Sullivan*, 800 F. Supp. 1197, 1201-02 (D. Vt. 1992) (confirming the same rule to be validly issued but noting that, in individual cases, district courts "must apply the Second Circuit's treating physician rule").[9] For the same reason, this Court would face no bar in directing EPA to comply with *Seacoast*, even assuming doing so would conflict with the new procedural rule.

---

[9] On direct review, the Second Circuit ultimately decided to abandon its Treating Physician Rule, mooting the decisions of the district courts in applying it. *See Schisler v. Sullivan*, 3 F.3d 563 (2d Cir. 1993), overruling, in part, *Schisler v. Sullivan*, 2004 U.S. Dist. LEXIS 10989, and *Aldrich v. Sullivan*, 800 F. Supp. 1197.

**III.     The Complaint Is Not "Permit Review" Within the Circuits' Exclusive Jurisdiction.**

Nor must Brayton Point Station's request be dismissed because it falls within the circuit courts' exclusive jurisdiction to review permits at the end of all agency action under Section 509(b)(1)(F), 33 U.S.C. § 1369(b)(1)(F).  Motion to Dismiss, p. 11.  Defendants' own Motion reveals the fatal flaw with their contrary argument -- under the very precedent they cite, jurisdiction does *not* now exist in the First Circuit under this provision to consider EPA's refusal to conduct the hearing required by *Seacoast*.  Motion to Dismiss, pp. 13-15.  That this matter eventually might become reviewable in another forum does not oust this Court of its present jurisdiction to decide whether EPA failed to perform a non-discretionary statutory duty.

Defendants acknowledge that the jurisdictional grant of Section 509(b)(1)(F) specifically assigns to the circuit courts review only of the "issuance or denial" of a permit.  Motion to Dismiss, p. 14.  As admitted by the agency in another recent case, this provision, and the other subsections of Section 509(b)(1), are given a narrow construction by the circuits, in light of the very specific language Congress used in framing them.  *Friends of the Earth v. EPA*, 333 F.3d 184, 189 (D.C. Cir. 2003) ("As EPA correctly observes, however, the courts of appeals have consistently held that the express listing of specific EPA actions in section 1369(b)(1) precludes direct appellate review of those actions not so specified."); *see also Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1313 (9th Cir. 1992) (rejecting circuit court jurisdiction to directly review TMDLs issued by EPA under 33 U.S.C. § 1313(d) on the ground that "the specificity and precision of section 1369" indicates a congressional intent "to exclude the unlisted section 1313" from review); *City of Baton Rouge v. EPA*, 620 F.2d 478, 480 (5th Cir. 1980) ("Thus the rule is

clear: the Courts of Appeals have jurisdiction for direct review only of those EPA actions specifically enumerated in 33 U.S.C. § 1369(b)(1).").[10]

Courts are also in agreement as to where jurisdiction for actions *not* listed in Section 509(b)(1) lies: "original jurisdiction over EPA actions not expressly listed in section 1369(b)(1) lies not with [the circuits], but with the district courts." *Friends of the Earth*, 333 F. 3d at 189; *see also Longview Fibre*, 980 F.2d at 1314 (concluding that "EPA determinations under section 1313(d)(2) are reviewable in an action in the *district* court"); *Save the Bay v. EPA*, 556 F.2d 1282, 1290 n.8 (5th Cir. 1977) (noting that a district court action, including an action under Section 505, could provide basis for review of EPA decision not to revoke a state's authority to issue NPDES permits); *Envtl. Prot. Info. Ctr. ("EPIC") v. Pacific Lumber Co.*, 266 F. Supp. 2d 1101, 1109 (N.D. Cal. 2003) ("Section 509(b) gives circuit courts original jurisdiction over challenges to certain actions by EPA Administrators . . . Other challenges to EPA actions may be brought in district courts either as citizen suits under Section 505(a), or as APA claims based on general federal question jurisdiction.").

Although Defendants would have this Court believe that the mere *prospect* of Circuit review divests it of jurisdiction, precedent does not support that interpretation. In fact, a number of decisions under the Clean Water Act and the Clean Air Act, 42 U.S.C. § 7401, *et seq.* (2004), (which contains a similar jurisdictional scheme) confirm that a district court may properly act on a complaint notwithstanding the fact that it raises issues that might later be subject to circuit court review. *See, e.g., Cent. Hudson Gas & Elec. Corp. v. EPA.*, 587 F.2d 549, 556 (2d Cir. 1978) (affirming that district court could review decision of EPA to retain jurisdiction over

---

[10] The narrow grant of jurisdiction contained in 509(b)(1)(F) was also acknowledged, although not specifically construed, by the First Circuit in *State of Rhode Island v. EPA*, 378 F.3d 19, 23 n.3 (noting the language limiting review under this section to an action "in issuing or denying any permit").

pending Clean Water Act permit applications even though "once the EPA's action ha[d] run its course [the circuit court] would have jurisdiction to review the EPA's decision to retain jurisdiction as well as to review the merits [of the permits]"); *Motor Vehicles Mfrs. Ass'n of the United States v. Costle*, 647 F.2d 675, 677-78 (6th Cir. 1981) (upholding district court jurisdiction under Clean Air Act non-discretionary duty cause of action to compel EPA to issue allegedly missing component of regulation although review of regulation itself lay solely in the Court of Appeals for the D.C. Circuit); *Citizens for a Better Env't*, 610 F.Supp. 106, 113-14 (N.D. Ill. 1985) (refusing to dismiss action to compel EPA to promulgate Clean Air Act implementation plan despite fact that disapproval of state plan was awaiting review in a circuit court).[11]  This result is fully consistent with the bifurcated jurisdictional system Congress created.[12]

Nor may Defendants ground their jurisdictional argument in an alleged lack of "finality" of EPA's decision to deny Brayton Point Station an evidentiary hearing.  Motion to Dismiss, pp. 13-15.  Because non-discretionary duty claims address agency *inaction*, in many cases there will be no "final action" before they are commenced.  Recognizing this principle, courts have rejected

---

[11] In its Motion, the Defendants rely on *Sun Enters., Ltd. v. Train*, 532 F.2d 280 (2d Cir. 1976) and *State of Maine v. Thomas*, 874 F.2d 883 (1st Cir. 1989) to support their argument that this Court lacks jurisdiction. However, as discussed in Part IV of this Opposition, both of the cited cases were dismissed because the plaintiffs identified no non-discretionary statutory duty to enforce. They therefore are irrelevant here, where the non-discretionary duty is established by statute and binding precedent. Nor is the Defendants' position helped by their citation to *Maier v. EPA*, 114 F.3d 1032 (10th Cir. 1997). Although the Tenth Circuit held that it had exclusive jurisdiction to compel *discretionary* revision of rules, it expressly acknowledged that jurisdiction to compel *non-discretionary* action would lie in district court. *Id.* at 1038 & n.9.

[12] *See e.g., Maier, 114 F3d 1032*; *EPIC*, 266 F. Supp. 2d at 1115 (conclusion that review of decisions to regulate point sources lies in the circuit courts, while review of decisions *not* to regulate categories of point sources lies in the district courts, was reasonable "given the specific language of the jurisdictional provision"). First Circuit precedent confirms that Congress' express bifurcation of jurisdiction is "presumed to be intentional" and entitled to be given force. *Citizens Awareness*, 391 F.3d at 346 (interpreting language of the Hobbs Act in the context of determining jurisdiction to review an NRC regulation). Although the court in *Citizens Awareness* ultimately decided to assume jurisdiction despite the absence of clear language on policy grounds, its rationale for doing so relied on two factors not present here: a Supreme Court decision counseling broad construction of circuit court jurisdiction under the precise statute at issue, *id.* at 346-47, and a jurisdictional statute that contained fundamental inconsistencies in its terminology, *id.* at 347. Most significantly, the statute in question, unlike the Clean Water Act, contained no express delegation to the district courts for the requested action nor any language like that in Section 509 unambiguously limiting circuit court review.

claims that a non-discretionary duty plaintiff must, for example, exhaust administrative remedies in order to reach a final agency decision point. *See, e.g., Am. Canoe Assoc. v. Browner*, 30 F. Supp.2d 908, 922 n.16 (E.D. Va. 1998) (no exhaustion of remedies required prior to non-discretionary duty action under Section 505; plaintiff had only to wait the statutorily-prescribed 60 days before commencing suit). In any event, Brayton Point Station has engaged in an administrative process culminating in a 53-page decision from EPA's EAB refusing Brayton Point Station's request for a hearing. *See In re USGen New England, Inc.*, 11 E.A.D. __ (EAB 2004). The Station has filed notice with the Administrator indicating an intent to commence this action and received no response. EPA's position that it will not provide the requested evidentiary hearing is "final."

In the end, Defendants have failed to support their contention that this Court is deprived of jurisdiction over Brayton Point Station's Complaint because the matter lies within the First Circuit's exclusive jurisdiction. Defendants' own arguments and cases indicate that the First Circuit does not now have jurisdiction under Section 509(b)(1)(F) to hear Brayton Point Station's request. This Court has jurisdiction to hear and act on Brayton Point Station's Complaint.

## IV.     Brayton Point Station's Complaint States a Valid Claim for Relief.

In a final attempt to avoid a hearing on the merits, Defendants contend that Brayton Point Station's Complaint fails to state a claim on which relief may be granted because a Section 505 action can never address the "manner" in which EPA performs a non-discretionary duty. Motion to Dismiss, pp. 15-16. Defendants are wrong. Numerous cases decided under Section 505 enforce non-discretionary duties governing *how* an action must be performed. *See, e.g., Rite-Research Improves Env't, Inc. v. Costle*, 650 F.2d 1312, 1322 (5th Cir. 1981) (court had authority

under Section 505 "to direct the Administrator to consider fully" an application improperly rejected without review); *Miccosukee Tribe*, 105 F.3d at 602-03 (duty to review "any new or revised state water quality standards" could not be met simply by relying on state's representations that water quality standards had not changed, if Administrator had not properly investigated whether change had, in fact, occurred, court would do so); *Proffitt*, 930 F. Supp. at 1099-1100 (EPA could not meet statutory obligation to "promptly" issue a federal standard by waiting 588 days or more to issue the required regulation). Nor would it make any sense to construe Section 505 otherwise. No district court would likely concede that its order under Section 505 to compel issuance of a rule may be fulfilled by anything less than proper notice-and-comment rulemaking.

*Sun Enterprises, Ltd. v. Train*, the primary case cited by Defendants for this proposition, is not to the contrary. In that case, the alleged "non-discretionary duty" violations consisted entirely of non-specific claims that EPA provided insufficient notice and opportunity to comment on an NPDES permit and failed to consult adequately with the Department of Interior. *Sun Enterprises*, 532 F.2d at 286. No failure by EPA to comply with specific statutory requirements was alleged -- indeed the court's decision indicates that EPA properly published notice of the permit in a local newspaper, accepted and responded to comments, including those of plaintiff, and provided required documentation to the Department of Interior. *Id.* at 285. Dismissal of the case was warranted because plaintiffs identified no statutory duty that had not been performed. Dismissal of the Complaint in *State of Maine v. Thomas*, the only other case cited by Defendants, was for precisely the same reason. 874 F.2d at 887-88 & n.7 (promise of EPA in a regulation to issue regional haze rules in the future could not support non-discretionary duty claim under the Clean Air Act because it was a self-imposed regulatory deadline, not a statutory deadline).

*Sun Enterprises* and *State of Maine* have no bearing here.  The First Circuit, in *Seacoast*, determined that Sections 402(a) and 316(a) incorporate the formal evidentiary hearing procedures of the APA.  *Seacoast*, 572 F.2d at 878.  As a result, in the First Circuit, the express statutory duty to provide a "public hearing" for permits includes, by operation of law, the duty to comply with the relevant APA procedures.  It is no defense to this action that EPA provided *some* type of hearing, Motion to Dismiss, p. 16-17, since the type of hearing EPA held did not comply with the pertinent provisions of the APA.  Section 505 authorizes this Court to compel EPA to perform its statutory duty.

## CONCLUSION

For the foregoing reasons, Brayton Point Station respectfully requests that the Defendants' Motion to Dismiss be denied.

By its attorneys,

/s/ John M. Stevens
Wendy B. Jacobs (No. 46273)
John M. Stevens (No. 30912)
Randall E. Kromm (No. 85630)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
(617) 832-1000

Date: January 12, 2005

## Certificate of Service

I hereby certify that a true copy of the Brayton Point Station's Memorandum in Opposition to Defendants' Motion to Dismiss was served by mailing first class and postage prepaid to the following counsel of record:  Heather E. Gange, U.S. Department of Justice, Environment and Natural Resources Division, Environmental Defense Section, P.O. Box 23986, Washington, DC 20026-3986.  A courtesy copy was provided by electronic mail to: heather.gange@usdoj.gov.

/s/ John M. Stevens
John M. Stevens

FHBOSTON/1155458.1