# FOLEY
# HOAG LLP
**ATTORNEYS AT LAW**

Wendy B. Jacobs
Boston Office
617 832 1133
wjacobs@foleyhoag.com

August 11, 2004

**Via Certified Mail & By Hand**

Michael Leavitt
Administrator
United States Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC 20460

       Re:    **Notice of Intent to Commence Civil Action under 33 U.S.C. s. 1365(a)(2) of the Clean Water Act**

Dear Mr. Leavitt:

      On behalf of USGen New England, Inc. ("USGenNE"), I write to provide notice of intent to commence a civil action against EPA pursuant to Section 505(a)(2) of the Clean Water Act, 33 U.S.C. § 1365(a)(2), for the Agency's failure to provide the evidentiary hearing that is mandated by Sections 316 and 402 of the Clean Water Act, 33 U.S.C. §§ 1326 and 1342, in connection with issuance of an NPDES permit to Brayton Point Station, an electrical generating facility owned by USGenNE and located in Somerset, Massachusetts. Specifically, in an opinion dated July 23, 2004, the Environmental Appeals Board ("EAB") denied USGenNE's request for an evidentiary hearing on the ground that EPA's current NPDES regulations, issued in May of 2000,[1] do not authorize evidentiary hearings for NPDES permit applicants.

      USGenNE is entitled by statute to the hearing it requested. The First Circuit Court of Appeals, which has ultimate jurisdiction over appeals from NPDES permits issued by Region I of EPA, has interpreted the Clean Water Act to mandate EPA to provide an evidentiary hearing to NPDES permit applicants. That Court's rulings are binding here. There is also no question that the EPA has authority to provide the required hearing.[2] Accordingly, EPA has sixty days in which to commit to providing USGenNE a formal evidentiary hearing meeting the requirements of the Clean Water

---

[1] *See* National Pollution Discharge Elimination System, Program Regulations Streamlining, Round II, 65 Fed. Reg. 30,886 (May 15, 2000).

[2] Should the Administrator choose not to conduct the hearing himself, EPA regulations allow the Administrator to delegate that role to the EAB. 40 C.F.R. §1.25(e)(2).

1875 K Street, NW / Suite 800 / Washington, DC 20006-1238 / TEL: 202.223.1200 / FAX: 202.785.6687
Foley Hoag LLP        BOSTON        WASHINGTON, DC        www.foleyhoag.com

Michael Leavitt
August 11, 2004
Page 2

Act. If EPA fails to make that commitment within sixty days, USGenNE will commence suit to compel performance by EPA of its non-discretionary duty.[3]

## Background

On October 6, 2003, Region I of the EPA ("Region I") issued an NPDES permit for Brayton Point Station. The permit imposed the unprecedented requirement that USGenNE retrofit the entire Brayton Point Station with closed-cycle cooling towers and piping at a cost exceeding one quarter of a *billion* dollars ($255,000,000.00). Since the Station began operating in about 1962, Region I had consistently permitted it to operate in an open-cycle mode. Neither Region I nor any other regional office of EPA has mandated closed-cycle cooling in any other NPDES permit renewal for an existing facility like Brayton Point Station.

USGenNE timely petitioned the EAB for review of the permit. Simultaneously with its petition, USGenNE filed a motion requesting a formal evidentiary hearing. As explained in the request, the First Circuit held in *Seacoast Anti-Pollution League v. Costle*, 572 F.2d 872 (1st Cir. 1978), that the Clean Water Act requires an applicant to be provided a formal evidentiary hearing meeting the requirements of Section 554 of the Administrative Procedures Act and due process, prior to issuance of the final NPDES permit. *Id.* at 878. The motion was opposed by Region I. The EAB ordered further briefing. Briefs were submitted by USGenNE, Region I, and several amicus parties.

On July 23, the EAB issued an Order denying USGenNE's request. The EAB's ruling summarized but did not address USGenNE's argument that the First Circuit's interpretation of the Clean Water Act is binding and requires an evidentiary hearing for permit applicants in New England. Instead, the EAB construed USGenNE's request as an impermissible challenge to the EPA regulations promulgated in May 2000, which purported to eliminate the automatic right of NPDES permit applicants to an evidentiary hearing. *In re: USGen New England, Inc., Brayton Point Station*, slip op. at 26. Thus construed, the EAB concluded that USGenNE's request should be denied. *Id.* at 47.

In fact, USGenNE's motion and brief expressly explained that it is not asking that the regulations be modified; it is asking that EPA fulfill its non-discretionary statutory obligation to provide an evidentiary hearing in accordance with the First Circuit's decision in *Seacoast*. *See, e.g.,* USGenNE Br. at 11-12.

---

[3] Recognizing that a hearing may prove to be unnecessary if the EAB ultimately directs Region I to issue a permit that accords with USGenNE's Petition for Review and briefs filed by it in this appeal, USGenNE asks only that EPA commit to performing its non-discretionary duty -- it need not actually convene the hearing within sixty days.

Michael Leavitt
August 11, 2004
Page 3

## The Seacoast Decision

The decision of the First Circuit Court of Appeals in *Seacoast* is binding in this permit proceeding.  In *Seacoast,* the Court held definitively that the Clean Water Act imposes a non-discretionary duty on EPA to conduct a formal evidentiary hearing in cases such as this one.  Specifically, the First Circuit held that the "public hearing" requirements of Section 316(a) and 402(a)(1) of the Clean Water Act triggered the formal hearing procedures of the Administrative Procedures Act.[4]  572 F.2d at 878.  This holding of *Seacoast* has never been overturned and remains the law in the First Circuit.[5]

EPA's issuance of regulations that interpret the Clean Water Act <u>not</u> to require a formal evidentiary hearing does not alter the binding effect of the First Circuit's contrary interpretation of the Act.  Nothing in First Circuit jurisprudence suggests that subsequently-issued interpretations of an agency automatically overrule pre-existing Circuit precedent.  Further, it is a fundamental principle of administrative law that the federal courts "must reject administrative constructions of a statute, whether reached by adjudications or rulemaking, that are inconsistent with the statutory mandate . . . Congress sought to implement."  *Securities Industry Assoc. v. Board of Governors*, 468 U.S. 137, 143 (1984).  Notably, the First Circuit's interpretation is consistent with the only two other circuits to have ruled directly on the same question.[6]  Thus, the evidentiary hearing requirements of *Seacoast* continue to apply to cases arising within the jurisdiction of the First Circuit and to be enforceable by district courts within the First Circuit under 33 U.S.C. § 1365(a)(2).  *See Ruthardt v. U.S.*, 164 F.Supp.2d 232,

---

[4] Section 402(a)(1) addresses the general procedures for issuing NPDES permits.  Section 316(a) addresses the procedures applicable to "thermal variances" for discharges of effluent from cooling water systems.  Because Brayton Point Station requested a thermal discharge variance as part of its NPDES permit application, both provisions apply in this case.

[5] In opposing USGenNE's motion, Region I did not argue the contrary.  Rather, it merely referred to cases from other jurisdictions holding that other statutory provisions did not require evidentiary hearings. .  These decisions are irrelevant to determining what law governs NPDES permits in the First Circuit.  Furthermore, only one of those cases, *Chemical Waste Management, Inc. v. U.S. E.P.A.*, 873 F.2d 1477 (D.C. Cir. 1989), purported to disagree with any part of the reasoning of *Seacoast*.  The First Circuit has since upheld its reasoning in *Seacoast* on precisely the issue questioned by *Chemical Waste Management.  See Dantran, Inc. v. U.S. Dep't of Labor*, 246 F.3d 36, 46 (1st Cir. 2001).  Thus, there is no doubt that *Seacoast* remains good law.

[6] In decisions issued shortly before *Seacoast*, the 7th and 9th Circuits also held that Section 316 and Section 402 triggered Section 554 of the Administrative Procedures Act.  *See United States Steel Corp. v. Train*, 556 F.2d 822 (7th Cir. 1977); *Marathon Oil Co. v. EPA*, 564 F.2d 1253 (9th Cir. 1977).  Both of these decisions remain good law in the Circuits in which they were decided.  *Cf. City of West Chicago v. NRC*, 701 F.2d 632, 644 (7th Cir. 1983) (finding that Nuclear Regulatory Commission hearing process did not require evidentiary hearings because the statute lacked "on the record" language in the Clean Water Act relied upon by the Court in *Train*).  These appear to be the only three decisions addressing the question of whether APA Section 554 procedures apply to Section 316 and Section 402 hearings.

Michael Leavitt
August 11, 2004
Page 4

244-45 (D. Mass. 2001) (holding that district courts lack authority to depart from Circuit precedent unless and until it is overruled by the First Circuit itself).

## Type of Evidentiary Hearing Mandated by Seacoast

The Clean Water Act states expressly that determinations under Sections 316(a) and 402(a)(1) must be made by EPA only "after opportunity for public hearing". In *Seacoast*, the First Circuit held that these provisions require a formal evidentiary hearing as prescribed by Section 554 of the Administrative Procedures Act.

In such a formal evidentiary hearing, Region I would be required to present the full basis for its permitting determination, and USGenNE would be able to present evidence to refute the purported basis for the Region's decision. Any disputes about the evidence to be accepted into the record would be resolved in the course of that proceeding by a neutral party, creating an objective record basis for decision. Inconsistencies could be addressed through cross-examination. Unconstrained by these procedural safeguards, Region I has been able to exclude from the record for this case information it considered inconvenient, ignore much of the evidence placed in the record by USGenNE, and offer constantly shifting explanations for its conclusions in response to critical comments, then claim that its decisions may not be challenged given the deference accorded to its decision-making process.

The two "public hearings" convened by Region I in Rhode Island and in Massachusetts shortly after the draft permit was issued did not in any sense satisfy the requirements of the Clean Water Act, the Administrative Procedures Act, or *Seacoast*. The purpose of those two evenings of "hearings" was to give the public an opportunity to share their concerns and comments with Region I. In the words of the hearing officer himself: "this is an informational, nonadversarial hearing, without cross-examination of either the commentors or the panel". Public Hearing Transcript of Hearing, August 26, 2002, at p. 8.

The Agency did not present any evidence itself. Nor did it entertain or respond to questions, never mind participate in cross-examination. Indeed, the "hearings" did not even allow enough time for USGenNE to present any evidence. The Company was strictly limited to five minutes per speaker. By stark contrast, making no pretense of providing a balanced forum for the presentation of views and information, Region I allowed virtually unlimited time to supporters of the Region's position.

This is precisely the type of case that cries out for a formal evidentiary hearing. The permit will impose extraordinary costs on the permittee, and the Region's decision turned on the heavily-disputed judgments of a small group of individuals concerning the impact of the permittee's intake and thermal discharge on the environment.

Michael Leavitt
August 11, 2004
Page 5

## **Conclusion**

The Agency's refusal to provide USGenNE an evidentiary hearing is a failure to perform a non-discretionary duty under the Clean Water Act and *Seacoast*. USGenNE is hopeful that litigation can be avoided and that the Agency will, within sixty days hereof, commit to providing USGenNE with the formal evidentiary hearing to which it is entitled.

Very truly yours,

Wendy B. Jacobs

cc:    Attorney General John Ashcroft

FHBoston/1089881.1